**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NANO MALDONADO,
        *Plaintiff-Appellant,*

v.

JEFF MORALES, in his capacity as
Director of the California
Department of Transportation,
        *Defendant,*

and

WILL KEMPTON, in his capacity as
Director of the California
Department of Transportation,
        *Defendant-Appellee.*

No. 06-15657

D.C. No.
CV-02-03167-CRB

NANO MALDONADO,
        *Plaintiff-Appellant,*

v.

WILL KEMPTON, in his capacity as
Director of the California
Department of Transportation,
        *Defendant-Appellee.*

No. 07-15535

D.C. No.
CV-02-03167-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
August 13, 2008—San Francisco, California

Filed February 25, 2009

2145

Before: Eugene E. Siler, Jr.,* M. Margaret McKeown, and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge McKeown

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

**COUNSEL**

Dennis Scott Zell, Fogarty & Zell, LLP, Millbrae, California, for the plaintiff-appellant.

Ronald W. Beals, Assistant Chief Counsel, California Department of Transportation Legal Division, Sacramento, California, for the defendant-appellee.

Michael F. Wright, Case Knowlson, Jordan & Wright, LLP, Los Angeles, California, for the amicus.

---

**OPINION**

McKEOWN, Circuit Judge:

Nano Maldonado has raised a number of constitutional challenges to the California Outdoor Advertising Act. Cal. Bus. & Prof. Code § 5200, et seq. As a consequence of a legislative amendment in 2008, the Act bars offsite commercial advertising but does not restrict non-commercial speech. Cal. Bus. & Prof. Code § 5275. Although some of Maldonado's claims are now moot because of this amendment, he continues to challenge application of the Act to his effort to display off-premises advertising on a highway billboard. This appeal is Maldonado's second trip to our court and requires us, once again, to reiterate our commercial speech jurisprudence involving billboards. We dismiss as moot Maldonado's appeal from the district court's injunction and affirm the district court's grant of summary judgment on his other claims.

**I. Background**

Maldonado has had a long-running dispute with the California Department of Transportation ("Caltrans") over the use of a billboard on his property. In the early 1990s, he

purchased property in Redwood City, California, that is adjacent to U.S. Highway 101. This land is in an area of Highway 101 that has been classified as "landscaped freeway." In 1993, Maldonado applied to Caltrans for a permit to use his billboard for offsite advertising. Because California's Outdoor Advertising Act ("COAA") bars property owners from using billboards along a landscaped freeway to advertise for offsite businesses, Caltrans denied the application. *See* Cal. Bus. & Prof. Code §§ 5440, 5442. Maldonado's efforts to skirt the offsite advertising ban have resulted in lengthy litigation at the state and federal level over the last ten years.

After Maldonado continued using the billboard for offsite advertising despite numerous citations, Caltrans sued him in California state court for nuisance. *See People v. Maldonado*, 86 Cal. App. 4th 1225, 1228-29 (Cal. Ct. App. 2001). The state court trial judge found in favor of Caltrans and enjoined Maldonado from continuing to violate the COAA. *Id.* at 1229-30. The injunction barred Maldonado from: (1) "posting or displaying any advertising on his billboard without first having obtained from [Caltrans] either a permit for outdoor advertising, or an exemption from or waiver of the permit requirement;" (2) "posting or displaying any on premise advertising which does not direct the viewer to the billboard location for purposes of conducting business;" (3) "posting or displaying any on premise advertising for activities not conducted on [his] premises;" and (4) "posting or displaying any on premise advertising for products or services which are only incidental or secondary to the principal business activity conduct on [his] premises." *Id.* at 1233-35 (internal quotations and citations omitted). The state court of appeals upheld all but the first of these prohibitions. *Id.*

Despite the injunction, Maldonado persisted in using his billboard for offsite advertising and was twice cited for contempt. He then sued in federal court, alleging the COAA violated the First Amendment, both facially and as applied to him. The district court dismissed the case on procedural

grounds. We reversed that dismissal. *See Maldonado v. Harris* ("*Maldonado II*"), 370 F.3d 945, 956 (9th Cir. 2004). On remand, the district court held that the COAA unconstitutionally privileged commercial speech over non-commercial speech because it permitted onsite commercial speech but barred onsite non-commercial speech. *Maldonado v. Kempton* ("*Maldonado III*"), 422 F. Supp. 2d 1169, 1178 (N.D. Cal. 2006). The district court enjoined enforcement of the COAA against non-commercial speech on billboards where onsite advertising is allowed. *Id.* at 1178. The district court later found that the COAA, as amended by the injunction, is constitutional and granted summary judgment against Maldonado on his other claims.

Maldonado now challenges the district court's injunction and summary judgment ruling. He argues that the district court's injunction was not an appropriate remedy for the statute's unconstitutional preference for commercial speech. He claims that the COAA is overbroad and vague, that it imposes unconstitutional prior restraints on speech, that it violates equal protection, and that it violates substantive due process. He also claims that the state court injunction barring him from violating the COAA imposes a separate unconstitutional restraint on his First Amendment rights.

## II.  ANALYSIS

### A.  JURISDICTION

Before addressing Maldonado's substantive claims, we first resolve three threshold issues: whether the amendment to the COAA moots Maldonado's claims, whether he has standing to raise his claims, and whether his claims about the criminal enforcement provisions are ripe. *See Kescoli v. Babbitt*, 101 F.3d 1304, 1308 (9th Cir. 1996) ("If the appeal is moot, we lack jurisdiction."); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998) (standing is a jurisdictional question that ordinarily must be resolved before addressing

the merits); *Texas v. United States*, 523 U.S. 296, 301-302 (1998) (courts should not reach the merits of unripe issues).

## 1. Mootness

On January 1, 2008, after the district court's injunction and after the two appeals consolidated in this case were filed, the California legislature amended the COAA. The new section, § 5275, reads:

> Notwithstanding any other provision of this chapter, the director may not regulate noncommercial, protected speech contained within any advertising display authorized by, or exempted from, this chapter.

Cal. Bus. & Prof. Code § 5275.

**[1]** With this amendment, the COAA now exempts non-commercial speech from regulation by Caltrans. The question then is whether this statutory change moots Maldonado's appeal. Mootness is " 'the doctrine of standing set in a time frame.' " *Abdala v. I.N.S.*, 488 F.3d 1061, 1063 (9th Cir. 2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). "A statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Native Village of Noatak v, Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994).

Before enactment of this new provision, the district court held that the COAA impermissibly favored commercial over non-commercial speech, because it provided an exception only for onsite commercial advertising and not for non-commercial messages. The district court remedied this constitutional infirmity by enjoining Caltrans from enforcing the COAA against non-commercial speech: "the Court will enjoin the State from enforcing COAA to prohibit non-commercial

speech wherever the Act permits commercial speech." *Maldonado III*, 422 F. Supp. 2d at 1178.

Section 5275 incorporates the same solution to the constitutional problem that the district court implemented via the injunction, specifically carving out non-commercial speech from regulation. Cal. Bus. Prof. Code § 5275. Now that the statute has been amended to exempt non-commercial speech, the injunction is moot.[1] *See Railway Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 465 n.8 (1982) (noting that the amendment of a law removing sections declared unconstitutional by a district court mooted that court's injunction).

Despite the changes to the COAA, Maldonado argues that because Caltrans stated that it will not change its enforcement policy, his claims are not moot. However, what Caltrans actually said is that it never enforced the COAA against non-commercial speech, even when the text of the law permitted it to do so. This statement was not a threat to flout the new law, but rather a promise to follow it.

**[2]** Four of Maldonado's claims against the COAA were predicated on the COAA *as reformed by the district court*: (1) the COAA is overbroad and vague; (2) the COAA is enforced via unconstitutional prior restraints; (3) the grandfathering provision violates equal protection; and (4) the COAA violates the suppression doctrine and substantive due process. These claims do not depend on the lack of statutory exception for non-commercial speech and thus remain live controversies.

**[3]** Maldonado's claim that the state court injunction bars him from exercising his First Amendment Rights is also unaf-

---

[1]Maldonado's dispute over the injunction centers on the multiple claims relating to the district court's allegedly improper reformation of the statute, and claimed failure to comply with Federal Rule of Civil Procedure 65(d).

fected by the changes to the COAA. Although the purpose of that injunction was to bar Maldonado from continued violation of the COAA, the language of the injunction bars him from engaging in offsite advertising on his billboard, not simply from violating the COAA. Therefore, the change to the COAA itself has no effect on this aspect of the state court injunction. This claim is addressed below in our analysis of prior restraint.

## 2. Standing

We next address Caltrans arguments that Maldonado lacks standing to pursue his claims. Caltrans posits that because a Redwood City ordinance also includes billboard restrictions, some of Maldonado's claims are not redressable. *See* Redwood City Sign Ordinance § 3.114 (2000) (amended 2007) (prohibiting offsite advertising subject to enumerated exceptions such as community activity signs, open house signs, garage sale signs, political signs and public event signs).[2] Caltrans argues that even if Maldonado were to prevail on his constitutional claims, the city ordinance would still prohibit Maldonado's advertising, hence obtaining relief in this court would be fruitless.

Caltrans's argument might have merit if the Redwood City prohibitions were clearly identifiable, enforceable, and distinct from the federal challenge to the amended COAA. The Seventh Circuit considered such a circumstance in *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge*, 9 F.3d 1290 (7th Cir. 1993). As we explained in a later case analyzing *Harp*, " '[a]n injunction against the portions of the sign and zoning codes that [Harp] has challenged [i.e., the off-site sign ban] would not let it erect the proposed sign; the village

---

[2]In its brief, Caltrans cited to the statute enacted in 2000 but later submitted a letter alerting the court to a statutory change that clearly exempted non-commercial messages. The amended version of the statute is codified at Redwood City Code §§ 3.57-3.61, 3.71-3.72.

could block the sign simply by enforcing another, *valid* ordinance [i.e., the size and height restrictions] already on the books.' " *Get Outdoors II, L.L.C. v. City of San Diego*, 506 F.3d 886, 893 (9th Cir. 2007) (quoting *Harp*, 9 F.3d at 1292) (alterations in original) (emphasis added).

**[4]** When evaluating redressability, the key question is whether the harm alleged by the plaintiff is *likely* to be alleviated by a ruling in its favor. *See Harp*, 9 F.3d at 1292 ("Law like life deals in probabilities. A rule reducing the probability of success causes a concrete injury for the same reason that an . . . option to buy stock sells at a positive price."). Maldonado's constitutional challenge to the COAA applies with equal force to the similarly-worded Redwood City ordinance, which also bans offsite commercial advertising. Although the Redwood City ordinance might present another obstacle in Maldonado's path were he to prevail in this litigation, it is one that a favorable ruling here would likely allow him to surmount. Therefore, the Redwood City Ordinance does not defeat Maldonado's standing to challenge the constitutionality of the COAA.

Caltrans also questions Maldonado's standing to challenge the COAA provisions that were not applied to him, such as COAA's grandfathering provision, which exempted pre-existing offsite advertisements from the Act. Although plaintiffs are generally limited to enforcing their own rights, standing is broader for facial First Amendment challenges. We have long held that plaintiffs have standing to challenge exceptions as underinclusive when the exception does not apply to the plaintiff. *See Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir. 1989) ("Plaintiffs . . . have standing to claim a constitutional violation because others similarly situated are exempt from the operation of a state law adversely affecting the plaintiffs."). Similarly, a plaintiff alleging that a statute is void for vagueness and overbreadth resulting in a chilling effect on speech has standing even if the law is constitutional as applied to him. *See S.O.C., Inc. v. County of*

*Clark*, 152 F.3d 1136, 1142-43 (9th Cir. 1998). These principles are sufficiently broad to grant Maldonado standing on his First Amendment and equal protection claims.

### 3.   Ripeness

**[5]** Finally, Caltrans insists that because Maldonado has not actually been prosecuted, his complaint about the criminal provisions of the COAA, Cal. Bus. & Prof. Code § 5464, is purely hypothetical and should not be addressed by this court. Although cast by Caltrans as a standing issue, this challenge fits more neatly into the ripeness category. Ripeness is intended to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The role of the courts is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

**[6]** Ripeness is both a constitutional and a prudential doctrine. *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993). Under the constitutional inquiry, we look to a three-part test: (1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether there has been a threat of prosecution from the state; and (3) whether the statute at issue has previously been enforced. *Thomas*, 220 F.3d at 1138-39. In other words, a "genuine threat of enforcement" is sufficient to render a claim ripe for review. *City of Houston v. Hill*, 482 U.S. 451, 459 n.7 (1987) (citing *Steffel v. Thompson*, 415 U.S. 452, 475 (1974)). The prudential inquiry weighs "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.

**[7]** The last time Maldonado came before this court, invoking the framework described above, we held that his claims

were ripe. Applying the test for constitutional ripeness, we held:

> Maldonado's suit fares well as far as the first and third factors are concerned: Maldonado alleges that his current conduct is in violation of COAA, and Caltrans has undoubtedly enforced the statute against Maldonado in the past. Although the second factor is a closer question, it also tends to favor Maldonado: while there may not have been specific threats of enforcement against his current signs, the fact that an injunction had been entered against Maldonado certainly qualifies as a threat of enforcement. We therefore conclude that Maldonado's First Amendment challenge meets the constitutional component of ripeness.

*Maldonado II*, 370 F.3d at 953-54 (footnote omitted). As for prudential ripeness, we held:

> Maldonado's suit meets the first prong because there has been no contention that the record needs to be developed further in order for the district court to be able to address the constitutional challenge. . . . The second factor also weighs in favor of Maldonado because withholding consideration of his claims will require him to risk being found in contempt of the state court injunction in order to be able to challenge the constitutionality of the statute.

*Id.* at 954. Caltrans offers nothing to change our analysis in this appeal. Maldonado appears locked in a continuing battle with the state over this billboard. The result is not hypothetical. Instead, there is a continuing cycle of contempt citations, litigation and appeals.

**B. OVERBREADTH AND VAGUENESS**

## 1. Criminal Enforcement

Maldonado challenges the constitutionality of the COAA provisions that punish violations of the ban on offsite advertising as misdemeanor criminal offenses. *See* Cal. Bus. & Prof. Code § 5464. Maldonado's overbreadth claim is linked to his vagueness claim. In effect, he argues that the distinction between commercial and non-commercial speech is vague and therefore fails to give sufficient notice of the prohibited conduct and chills protected speech. Maldonado alleges the statute is overbroad because the vagueness of this distinction will result in some non-commercial speech being subjected to the COAA.

[8] To be sure, courts must take extra care in determining whether criminal statutes are vague or "reach[ ] a substantial amount of constitutionally protected conduct" because of the heightened risk of deterring people from engaging in constitutionally protected conduct. *City of Houston*, 482 U.S. at 458. Because of the nature of criminal sanctions, "[t]he standards of certainty in statutes punishing for offenses is higher than in those depending primarily on civil sanction for enforcement." *Winters v. New York*, 333 U.S. 507, 515 (1948).

[9] The standard for unconstitutional vagueness is whether the statute "provide[s] a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, ___ U.S. ___, 128 S. Ct. 1830, 1845 (2008) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). The settled law of this circuit is that the commercial/non-commercial and onsite/offsite distinctions are not unconstitutionally vague. *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 814 (9th Cir. 2003) ("We have relied on *Metromedia* to uphold sign ordinances that distinguish between onsite and offsite signs when that distinction

does not also prevent the erection of on-site non-commercial signs.") (citing *Metromedia Inc. v. City of San Diego*, 453 U.S. 490, 511-14 (1981)); *Acklerley Communications of the Northwest, Inc. v. Krochalis*, 108 F.3d 1095 (9th Cir. 1997) (upholding Seattle's ban on offsite commercial advertising on billboards); *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 613 (9th Cir. 1993) ("Because our First Amendment jurisprudence recognizes a distinction between commercial and non-commercial speech, government officials have to place a particular message into one or the other category for purposes of regulation. The potential difficulty of that categorization in itself does not render the regulations unconstitutional."). Because the overbreadth and chilling effect claims are dependent on the statute's alleged unconstitutional vagueness, those claims also fail.

## 2.  Suppression Doctrine

**[10]** Maldonado claims that the COAA is a violation of the "suppression doctrine." Maldonado's brief lumped this claim in with his substantive due process claim,[3] but it is in fact a First Amendment claim premised on *City of Ladue v. Gilleo*, 512 U.S. 43 (1994). In *Ladue*, the Supreme Court held that a municipal ordinance banning nearly all types of signs, although content-neutral, was unconstitutional because it "suppress[ed] too much speech." *Id.* at 55. In essence, the suppression doctrine is an overbreadth doctrine that prevents highly restrictive yet content-neutral limitations on speech

---

[3]Maldonado's apparent substantive due process arguments, namely that the state cannot validly prohibit offsite advertising in urban areas, and "the government's asserted aesthetic and traffic safety interests" cannot overcome his liberty and property interests, miss the mark. The basis for the sign ban relates to signs in the aggregate, not to Maldonado's billboard in particular. *See United States v. Edge Broadcasting Co.*, 509 U.S. 418, 427-28 (1993). Nor do our billboard cases create an urban carve out. Rather we have consistently upheld bans in urban areas, like Los Angeles. *See, e.g., Metro Lights v. City of Los Angeles*, 551 F.3d 898, 914 (9th Cir. 2009).

from foreclosing or nearly foreclosing an entire medium of expression:

> [W]e have held invalid ordinances that completely banned the distribution of pamphlets within the municipality, *Lovell v. City of Griffin*, 303 U.S. 444, 451-452, 58 S. Ct. 666, 82 L. Ed. 949 (1938); handbills on the public streets, *Jamison v. Texas*, 318 U.S. 413, 416, 63 S. Ct. 669, 87 L. Ed. 869 (1943); the door-to-door distribution of literature, *Martin v. City of Struthers*, 319 U.S. 141, 145-149, 63 S. Ct. 862, 87 L. Ed. 1313 (1943); *Schneider v. State (Town of Irvington)*, 308 U.S. 147, 164-165, 60 S. Ct. 146, 84 L. Ed. 155 (1939), and live entertainment, *Schad v. Mount Ephraim*, 452 U.S. 61, 75-76, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981). . . . Although prohibitions foreclosing entire media may be completely free of content or viewpoint discrimination, the danger they pose to the freedom of speech is readily apparent—by eliminating a common means of speaking, such measures can suppress too much speech.

*Id.*

[11] The COAA does not ban all signs, or even nearly all signs, but only off premises, commercial billboards. Maldonado remains free to post any non-commercial messages or to post onsite advertising on his billboard. This regulation is substantially less restrictive than any the Supreme Court has struck down under the suppression doctrine. We have upheld similar restrictions in the past and did so just last month. *See, e.g.*, *Metro Lights v. City of Los Angeles*, 551 F.3d 898, 914 (9th Cir. 2009). Therefore, Maldonado's suppression doctrine claim fails.

## C. PRIOR RESTRAINT

Under California law, violations of the COAA are public nuisances that may be enjoined by the courts. Cal. Bus. &

Prof. Code § 5461. Maldonado argues that the state court injunction barring him from continuing to violate the COAA constitutes an unconstitutional prior restraint on speech. The fact that the COAA allows such prior restraints, he claims, renders it unconstitutional.

[12] That the statute allows injunctions against speech does not itself render the COAA unconstitutional—"[n]ot all injunctions that may incidentally affect expression . . . are prior restraints." *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 763 n.2 (1994) (citations omitted). Content-neutral injunctions that do not bar all avenues of expression are not treated as prior restraints. *Id.*

[13] The content-neutral injunction against Maldonado is a pointed one—it bars him from violating the COAA, namely posting offsite advertising on his billboard. *Maldonado*, 86 Cal. App. 4th at 1234; *see also Metro Lights*, 551 F.3d at 912 (holding that a similar ordinance barring offsite commercial advertising but permitting non-commercial and onsite commercial advertising is "not by its terms a content-based regulation"). The injunction does not limit his onsite advertising. Nor does it bar him from posting non-commercial messages. The injunction merely means "he may not use his billboard to direct travelers to businesses that are not located [on his premises]." *Maldonado*, 86 Cal. App. 4th at 1234-35. In effect, the injunction does no more than provide court-ordered compliance with the statute.

The fact that the restriction is not a prior restraint does not end the inquiry. Injunctions are subject to a higher level of scrutiny than generally applicable laws:

> There are obvious differences, however, between an injunction and a generally applicable ordinance. Ordinances represent a legislative choice regarding the promotion of particular societal interests. Injunctions, by contrast, are remedies imposed for viola-

tions (or threatened violations) of a legislative or judicial decree.

*Madsen*, 512 U.S. at 764. Because of these differences between injunctions and generally applicable ordinances, the Supreme Court has counseled that "a somewhat more stringent application of general First Amendment principles" should be used to review injunctions. *Id.* at 765.

**[14]** In *Madsen*, the Court held that the appropriate test for content-neutral injunctions was "whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Id.* at 765. *Madsen* involved non-commercial speech by anti-abortion protestors, whereas Maldonado has engaged in less protected commercial speech. Whether *Madsen*'s stricter test for evaluating an injunction applies equally to an injunction regulating commercial speech is a distinction not addressed by the Court. *See generally Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562-63 (1980) ("The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression.") (citations omitted). However, we need not reach that issue because even under the *Madsen* test, the injunction is constitutional.

**[15]** California's interest in improving aesthetics and safety along its highways is significant. *Metromedia*, 453 U.S. at 511. Maldonado repeatedly violated the ban on offsite advertising, prompting the state's efforts to enjoin him from further violations. The injunction only bars Maldonado from engaging in conduct that is itself illegal, a narrower limit than that upheld in *Madsen*, which involved a 36-foot no-protest buffer zone around an abortion clinic. *Madsen*, 512 U.S. at 769-70. Because the injunction bars only further violations of the same, constitutionally valid law that Maldonado previously violated, it "burdens no more speech than necessary to accomplish" the government's interest in curtailing billboard advertising. *See id.* at 754.

## D.  EQUAL PROTECTION

The COAA exempts billboards that were already in place in 1967. Cal. Bus. & Prof. Code § 5364. Maldonado argues that this exception violates equal protection because it permits some speakers to maintain billboards with offsite commercial advertising while barring him from doing so. Further, he claims that because speech is involved, the grandfathering clause is subject to strict scrutiny.

We have previously held that strict scrutiny under the Equal Protection Clause is inappropriate where a law regulating speech is content-neutral, even where the speech at issue was non-commercial. *Jones Intercable of San Diego, Inc. v. City of Chula Vista*, 80 F.3d 320, 327 (9th Cir. 1996) (citing *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 655 (1994)). The grandfathering clause of the COAA must survive, at most, an intermediate level of scrutiny. *See Jones Intercable*, 80 F.3d at 327.

**[16]** The state's interest is substantial and easily passes the necessary scrutiny to overcome this equal protection challenge. The district court noted that banning new offsite billboards but allowing legal nonconforming billboards to remain "furthers the State's significant interest in reducing blight and increasing traffic safety," even if all billboards are not eliminated. The state government also has a strong financial interest in allowing the grandfathered billboards to stay. Without the exemption, the state would have to pay just compensation to the billboard owners or risk losing the state's full allotment of federal highway money. *See* 23 U.S.C. § 131. Maldonado's complaint against grandfathering also overlooks an important point—when he purchased the property in the early 1990s, the offsite ban had been in effect for more than twenty years. His sign was never legally permitted or maintained, so he is not similarly situated to the grandfathered landowners. Maldona-

do's equal protection challenge to the grandfathering provision fails.[4]

[17] Dismissed as moot with respect to Maldonado's challenges to the district court's injunction and affirmed as to the district court's grant of summary judgment on the remaining claims.

DISMISSED IN PART; AFFIRMED IN PART.

---

[4]Except to the extent that it is subsumed in his equal protection argument, we decline to address Maldonado's passing references to "spot zoning." Arguments made in passing and inadequately briefed are waived. *Halicki Films, L.L.C. v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1229-30 (9th Cir. 2008).