FILED
United States Court of Appeals
Tenth Circuit

July 30, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MOUNTAIN STATES MEDIA, LLC, a
Colorado limited liability company;
WAYNE OSTERLOO, an individual,

      Plaintiffs–Appellants,

v.

ADAMS COUNTY, COLORADO, a
Colorado governmental entity; ROBERT
D. CONEY, an individual,

      Defendants–Appellees.

No. 09-1360
(D.C. No. 1:08-CV-01513-CMA-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

After being denied a permit to construct a billboard, Mountain States Media, LLC

("MSM") and Wayne Osterloo proceeded to rely on what they considered an

inconsistency in the Adams County, Colorado, Development Manual ("Development

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Manual"). Rather than constructing billboards, Osterloo informed the County that MSM intended to construct "civic events posters and announcements," a category exempt from Adams County sign regulations. The County repeatedly rebuffed Osterloo's attempt to recharacterize his proposal—which concerns 672-square foot placards[1] raised thirty-five feet from the ground—as a proposal for "civic events posters and announcements." Osterloo and MSM then filed suit against Adams County and an Adams County official in federal district court, asserting several 42 U.S.C. § 1983 claims and a declaratory judgment claim.[2] Plaintiffs appeal the district court's grant of summary judgment in favor of the defendants. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's grant of summary judgment with respect to plaintiffs' § 1983 claims. We vacate the district court's judgment with respect to the declaratory judgment claim and remand with instructions to dismiss for want of jurisdiction.

## I

Because this appeal is from a grant of summary judgment, we will recite the facts in the light most favorable to MSM and Osterloo, the losing parties below. MSM is an outdoor advertising company, owned by Osterloo, that obtained lease rights to erect placards on parcels of property in Adams County. Pursuant to the Development Manual,

---

[1] As will be described infra, the regulations at issue in this appeal distinguish between "signs" and "billboards." We use "placard" throughout this order as a generic term that may refer to either "signs" or "billboards."

[2] Plaintiffs asserted additional claims that they have since abandoned.

anyone wishing to construct a billboard must first obtain a conditional use permit. See

Development Manual § 4-15. MSM applied for a permit under these regulations but was

denied on the grounds that:

> 1. [The proposed billboard] is not consistent with the purposes of the [Development Manual].
>
> 2. [The proposed billboard] is not compatible with the surrounding area, is not harmonious with the character of the neighborhood, would be detrimental to the immediate area, would be detrimental to the health, safety, or welfare o f [sic] the inhabitants of the area and the county.
>
> 3. [The permit application] has not addressed all off-site impacts.
>
> 4. The site is not suitable for the [proposed billboard].
>
> 5. The site plan for the [proposed billboard] does not provide for the most convenient and functional use of the lot.

Neither party disputes that the County's determination was made in accordance with its

stated criteria for evaluating conditional use permit applications. See Development

Manual § 2-02-08-06.

After the initial permit rejection, Osterloo inquired about a large, County-owned

placard located just off of the Adams County Regional Park and Fairgrounds that directs

drivers to the fairgrounds. Any group that rents out the fairgrounds may advertise its

event on the fairgrounds placard; use of the sign is included in the fee for renting the

fairgrounds. Examples of the type of event held at the fairgrounds include "Gene's

October Swap Meet," "Teresa Dudden Barrel Racing," "Chuck and Duck Roping," and

the "Colorado State Pigeon Show." The County does not have a conditional use permit

for this placard.

-3-

Dennis Bell, a planning assistant with the Planning and Development Department, responded to Osterloo as follows:

> [The fairgrounds placard] was originally constructed under Sign Permit # 109 and approved on June 3, 1971. . . . Staff finds that the reason the Parks Department was not required to obtain an approved Conditional Use Permit for the fairgrounds sign is due to the fact that the Parks Department sign is a Government Sign rather than an Off-Premise Sign (billboard) and further, that Government Signs were exempted in 1971 pursuant to the zoning regulations in effect at the time.

Osterloo then notified the County that MSM intended to build "civic events posters and announcements" on its leased property, rather than billboards. Under the Development Manual, "Off-Premise Sign (Billboard)" rules are contained in § 4-15, but "Signs and Outdoor Commercial Advertising Devices" are covered by § 4-14. The latter regulations provide:

> **EXEMPTED SIGNS**
>
> The provisions of this Section 4-14 do not apply to the following, which are therefore excepted from these provisions.
> . . . .
> 8. Civic Events Posters and Announcements: Posters, flyers and announcements promoting civic events may be displayed, but shall not contain advertisements for products or services not associated with the civic event.

§ 4-14-03-01. The parties refer to this provision as the "CEPA exemption."

In his communications with the County, Osterloo represented that MSM would initially build three large placards, each approximately 672 square feet in area and thirty-five feet off the ground—with fifteen more such placards to follow. These placards were substantially similar to the billboards originally proposed. However, Osterloo

-4-

represented that the placards would contain only messages promoting civic events, and that products or services not associated with the event would not be advertised. Referencing the fairgrounds placard, Osterloo insisted that if "the County is to remain consistent than [sic] the zoning department must automatically approve these 'signs'."

In response, Abel Montoya, a planning manager for the Adams County Planning and Development Department, informed Osterloo that the placards MSM proposed to build were considered billboards rather than CEPA signs, and that only recognized political subdivisions of the state of Colorado were eligible for the CEPA exemption. In an increasingly heated exchange, Osterloo claimed that the County had engaged in years of "abusive, unethical, and discriminating behavior," and that, because CEPA signs "are exempt from any sign regulation or permits . . . [and] building permits and fees," they existed in a "type of [regulatory] environment we cannot pass up." After various members of the Planning and Development Department insisted that the proposed placards were billboards rather than CEPA signs, Osterloo responded that he had "had enough of these ridiculous and illegal actions" and suggested a County attorney "convince someone to pull their head out [sic] their [expletive] and deal with this issue in a rational and civil manner." The Planning Department remained firm in its classification of the proposed placards as billboards, subject to the regulations contained in Development Manual § 4-15 and requiring a conditional use permit.

Robert Coney, the director of the Planning and Development Department, stated that he "made the determination that the CEPA exception did not apply to commercial

billboards" because the CEPA exemption: (1) only covered signs related to events "sponsored by governments, not commercial advertising"; (2) applied only to signs erected by governmental entities; and (3) applied only to "small forms announcing civic events" rather than "traditionally sized billboards."

MSM then challenged the Planning and Development Department's interpretation of the CEPA exemption with the Adams County Board of Adjustment. See Development Manual § 1-02-03-12-03 (granting the Board of Adjustment the authority to hear appeals from the determination of an administrative official). MSM alleged that interpreting the CEPA exemption to only apply to government entities conflicted with the plain text of the exemption and violated the First and Fourteenth Amendments to the United States Constitution. The Planning and Development Department argued that, under the Development Manual, MSM's proposed placards were classified as billboards rather than signs. It further noted the provisions for CEPA signs had not been enacted until after the fairgrounds placard had been built, but pointed to the fairgrounds placard as an example of what a CEPA sign would look like "[i]f the county were to erect a CEPA sign today." After considering the arguments of both sides, the Board of Adjustment unanimously upheld the Department's determination that MSM would have to obtain a conditional use permit for billboards in order to move forward with the proposed placards.

MSM and Osterloo then filed a federal suit against Adams County and Coney. They alleged that Adams County's application of the CEPA exemption violated MSM's federal constitutional rights to freedom of speech and equal protection, and sought a

declaratory judgment interpreting the CEPA exemption as applicable to both governmental and private entities. The district court granted summary judgment to the defendants on all claims and determined that Coney was entitled to qualified immunity. MSM timely appealed the grant of summary judgment on its freedom of speech, equal protection, and declaratory relief claims.[3]

## II

We review a grant of summary judgment de novo. Shero v. City of Grove, 510 F.3d 1196, 1200 (10th Cir. 2007). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (quotation and alteration omitted). In conducting our evaluation, we do not defer to a district court's legal conclusions, including its interpretations of state law. Thomson v. Salt Lake County, 584 F.3d 1304, 1312 (10th Cir. 2009).

## A

Plaintiffs contend that "private persons and entities in Adams County are absolutely barred from erecting or maintaining signs that announce or promote 'civic events,' regardless of size." This assertion is entirely unsupported by the record. County

---

[3] Although Coney was included in the caption on appeal, plaintiffs do not challenge the district court's grant of qualified immunity. We therefore dismiss Coney as a party to this appeal, and proceed only with respect to plaintiffs' claims against Adams County.

regulations provide that small signs, residential signs, and various other exempted signs may be built without a permit. See Development Manual §§ 4-14-03-01, 4-14-05. Further, extant billboards may carry messages related to civic events or other content, and private entities may erect new billboards that will contain any type of content provided they first obtain a conditional use permit. See § 14-15 (laying out only content-neutral requirements for billboards).

Although plaintiffs attempt to frame the CEPA exemption as somehow limiting their speech, that provision is merely an exception to certain regulations—it does not limit anyone in any manner. Instead, the regulations that actually limit plaintiffs' speech are the billboard permitting requirements found in Development Manual § 4-15. There is no dispute in the record that these are the regulations the County used in denying MSM's proposal.

Billboard permitting requirements undoubtedly burden the use of billboards as a medium for speech, but the County's permitting scheme does not constitute a total ban on civic events speech by private parties. The Supreme Court has explained that "[t]he distinction between laws burdening and laws banning speech is but a matter of degree." United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 812 (2000). Nevertheless, it has also held that reasonable regulations of the physical characteristics of signs are generally acceptable:

> While signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views,

distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.  It is common ground that governments may regulate the physical characteristics of signs—just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise.

City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994) (citations omitted).

Yet, stubbornly clinging to the theory that the CPEA exemption is somehow a limitation on their speech, plaintiffs fail to address Development Manual § 4-15 at all. The record demonstrates that any placard of any type may display speech related to civic events after it has been duly constructed in accordance with the Development Manual, and plaintiffs have advanced no reasoned argument challenging the actual restrictions contained in the Development Manual.

Nor could they on the record before us:  It is well established that requiring all billboards to be authorized by a conditional use permit prior to their construction does not offend freedom of speech, Gilleo, 512 U.S. at 48, provided the permitting process does not delegate excessive discretion to the licensing authority, Freedman v. Maryland, 380 U.S. 51, 56 (1965), or allow the licensing authority to indefinitely postpone decision making, FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 226 (1990) (plurality opinion). On its face, § 4-15 of the Development Manual sets out reasonable standards to guide a decision maker in determining whether a conditional use permit is appropriate.  Further, the County did not unreasonably delay in deciding plaintiffs' requests.  Each of plaintiffs' applications and letters to the County were responded to in a timely fashion.  Thus, plaintiffs' § 1983 claims based solely on the First Amendment fail.

**B**

Although the CPEA exemption does not limit plaintiffs' speech, it may form the basis of an equal protection claim that "is closely intertwined with First Amendment interests." Police Dep't of Chicago v. Mosley, 408 U.S. 92, 95 (1972); see also Congregation Lubavitch v. City of Cincinnati, 997 F.2d 1160, 1165 (6th Cir. 1993) (noting that cases involving "the First Amendment–Equal Protection intersection" are generally evaluated using an equal protection analysis (quotation omitted)). Plaintiffs challenge the CEPA exemption as interpreted and applied; we must begin, therefore, by examining how the County has applied it.[4] According to the County, the CEPA exemption applies only to: (1) signs small enough that they do not qualify as billboards; (2) signs owned by the government; (3) signs advertising government or government-sponsored events; and (4) signs that are noncommercial in nature.

Plaintiffs concentrate their briefing on the second and third factors. Given that the first factor (size) would appear to disqualify MSM's proposed placards from being treated as a CPEA sign, however, we focus on that issue. See Rocky Mountain Christian Church v. Bd. of County Comm'rs, __ F.3d __, 2010 WL 2802757 at *6 (10th Cir. 2010)

---

[4] The district court seems to have treated plaintiffs' claim as a facial challenge to the CEPA exemption, and first engaged in an analysis of its meaning. Given plaintiffs' confused briefing, which switches between objections to the CEPA exemption as written and as applied, this error is understandable. But plaintiffs' complaint explicitly challenges the County's "interpretation and application" of the CEPA exemption, and we will hold them to this construction of their claims. See Fed. R. Civ. P. 8.

("Generally, we wish to avoid, when possible, deciding constitutional questions and thereby overturn legislative enactments and etch in stone rules of law beyond the reach of most democratic process." (quotation omitted)).  Although the district court did not address the sign–billboard size distinction, "we may affirm on any ground adequately supported by the record provided that the parties have had a fair opportunity to address it." Hobbs v. Zenderman, 579 F.3d 1171, 1179 n.2 (10th Cir. 2009).  Both parties have briefed the size issue on appeal, and the record is adequately developed to allow us to decide it.

The term "billboard" is commonly understood to mean "a large panel designed to carry outdoor advertising and mounted on a building or framework near a road." Webster's 3d New Int'l Dictionary Unabridged 215 (1993).  There can be little doubt that MSM's proposed placards fall squarely into this category.  Although there may exist some gray area between "billboard" and "[p]osters, flyers and announcements promoting civic events," Development Manual § 4-14-03-01, 672-square-foot placards set on a platform that extends thirty-five feet off of the ground are clearly billboards.  Because the CEPA provision operates only to exempt signs from the requirements of Development Manual § 4-14, see id. § 4-14-03-01, the County's application of the regulations contained in Development Manual § 4-15 to the plaintiffs' proposed placards appears to

-11-

be a proper.[5]

Requiring all billboards to be authorized by a conditional use permit prior to their construction does not violate equal protection. See Ladue, 512 U.S. at 51 & n.9. Plaintiffs, however, dispute that the County has interpreted the CEPA exemption to apply only to signs that are smaller than billboards. They first assert that the County is raising such an argument for the first time on appeal, but this argument, too, is contradicted by the record. In an affidavit submitted with defendants' dispositive motion, Coney averred that the CEPA "signs are small forms" and not "traditionally sized billboards."

Next, plaintiffs assert that the County's classification of the fairgrounds placard as a CEPA exemption sign demonstrates that the CEPA exemption is not limited to small signs. Although the Development Manual does not specify how big a placard must be before it becomes a billboard, Adams County concedes on appeal that the fairgrounds placard would be classified as a billboard under current regulations and, were it built today, would require a conditional use permit.

Moreover, it is clear that Adams County has not applied the CEPA exemption to allow for the construction of large billboards. Although we do not weigh evidence, we

---

[5] To the extent that plaintiffs attempt to challenge the County's interpretation unmoored from their particular circumstances, they would lack standing to do so. "The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." L.A. Police Dep't v. United Reporting Publ'g Corp., 528 U.S. 32, 38 (1999) (quotation omitted). Plaintiffs do not argue on appeal that an exception to this traditional rule should apply.

note for context that the record is ambiguous with respect to whether the County ever actually classified the fairgrounds placard as a CEPA exemption sign. For example, in response to the question, "When did the county first make any determination whatsoever that the CEPA exemption applied to any specific location?" Coney responded, "I'm not sure that we did." Coney also responded to the question, "Is it your determination that the CEPA exemption does not apply to the [fairgrounds placard]?" with, "I don't believe it does because it's [sic] history." Coney also referenced the fact that the fairgrounds placard is a nonconforming sign. The portion of Coney's deposition that plaintiffs claim demonstrates Coney admitted the fairgrounds placard is a CEPA exemption sign is, unfortunately, laden with transcription errors to the point of being unintelligible.[6]

Although a reasonable jury could conclude that the County reclassified the fairgrounds placard as a CEPA exemption sign almost forty years after it was built, there is no evidence that the fairgrounds placard was <u>built</u> as a CEPA sign. When the fairgrounds placard was built in 1971, the CEPA exemption did not exist. Plaintiffs cannot point us to any placard erected pursuant to the CEPA exemption. Thus, a reasonable jury would have no basis for concluding that a large billboard could be constructed under the CEPA exemption, by either a government or a private entity.

Of course, the County's treatment of the fairgrounds placard—allowing it to remain standing even though it now would be classified as a billboard and would require

---

[6] For example, the reporter transcribed one question as, "Yes phone conforming from the sign code note note none."

a conditional use permit to be built—must also pass constitutional muster. Although this circuit appears to have never squarely addressed the issue, the Ninth Circuit has held that "grandfathering in" billboards—banning construction of new billboards that are not in compliance with current regulations but allowing previously built, non-conforming billboards to remain—can survive an equal protection challenge. Maldonado v. Morales, 556 F.3d 1037, 1048 (9th Cir. 2009). We agree.

The Development Manual provision dealing with grandfathering is content-neutral and applies equally to the government and to private parties. See § 1-01-09-02. As such, intermediate scrutiny of grandfathering is appropriate. See Turner Broadcasting Sys., Inc. v. FCC, 512 U.S. 622, 662 (1994). A regulation will survive such scrutiny if "it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." Id. (quotation omitted).

Restricting the construction of billboards but allowing legal non-conforming billboards to remain furthers the County's stated interest in avoiding clutter and improving public safety and welfare. See Development Manual §§ 1-1-03, 4-14-01. Such interests are undeniably substantial and unrelated to the suppression of speech. The County also has an interest in distinguishing between existing and proposed billboards: It could be compelled to pay just compensation to the owners of existing billboards if the County demanded the existing, noncompliant billboards be removed. See Maldonado,

-14-

556 F.3d at 1048. Further, the fit between the practice of grandfathering and these interests is sufficient to pass intermediate scrutiny. See id. The County differentiates between existing and proposed billboards without additional distinctions.

We do not address whether the constitutional rights of a private entity that wished to construct a placard smaller than a billboard, for the sole purpose of engaging in speech related to civic events, would be violated by the County's permit requirements. Nor do we address how broadly the County could construe the term "civic events" under the CEPA exemption without becoming similarly situated to private parties for the purpose of an equal protection analysis. The record before us demonstrates that plaintiffs have only sought to construct billboards, and that everyone in Adams County must obtain a permit before erecting a billboard. The County is well within its rights to enforce such a zoning scheme. Therefore, the district court's grant of summary judgment with respect to plaintiffs' § 1983 equal protection claim was proper.

**III**

Plaintiffs seek a determination that the plain text of the CEPA exemption requires it to be applied equally to private parties and government entities. Having determined that plaintiffs do not present a valid § 1983 claim, we conclude that the district court's exercise of supplemental jurisdiction over this claim was an abuse of discretion.[7]

---

[7] Although the precise nature of plaintiffs' claim seeking declaratory relief is unclear, plaintiffs solely relied on supplemental jurisdiction both in their complaint and on appeal.

-15-

When a district court has original jurisdiction over claims arising under federal law, it has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see also Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997). Plaintiffs' declaratory judgment claim is a "legal 'claim[],' in the sense that that term is generally used in this context to denote a judicially cognizable cause of action." Id. Further, MSM's declaratory and § 1983 claims "derive from a common nucleus of operative fact"— namely, MSM's unsuccessful effort to build placards—and thus "form part of the same case or controversy under Article III." Id.

However, a district court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c). When a district court properly concludes that it has supplemental jurisdiction pursuant to § 1367(a), we review a district court's discretionary decision to exercise supplemental jurisdiction for abuse of discretion. See Summum v. Duchesne City, 482 F.3d 1263, 1276 (10th Cir. 2007), vacated on other grounds by Duchesne City v. Summum, 129 S. Ct. 1523 (2009).

-16-

Plaintiffs' declaratory claim is precisely the type of claim over which supplemental jurisdiction should not be exercised:  Plaintiffs ask the federal courts to interpret a local zoning ordinance in the first instance.  Zoning law is a uniquely local concern with which "[f]ederal courts should be reluctant to interfere." Norton v. Vill. of Corrales, 103 F.3d 928, 933 (10th Cir. 1996).  "We decline to sit as zoning boards of appeals when presented with claims which, although couched in constitutional language, at bottom amount only to the run of the mill dispute between a developer and a town planning agency." Gunkel v. City of Emporia, 835 F.2d 1302, 1305 (10th Cir. 1987).

Because plaintiffs' § 1983 claims have been dismissed, they seek a declaration as to the meaning of a county zoning ordinance that does not violate their federal constitutional rights.  They do so despite the availability of state judicial review pursuant to Colo. R. Civ. P. 106(a)(4).  See Sundheim v. Bd. of County Comm'rs, 904 P.2d 1337, 1345 (Colo. Ct. App. 1995) ("An action for judicial review under C.R.C.P. 106(a)(4) is the exclusive remedy for contesting a zoning decision when the entire zoning ordinance is not challenged and when record review of the county procedure provides an adequate remedy.  When only declaratory relief is requested, claims brought under 42 U.S.C. § 1983 effectively merge into the C.R.C.P. 106 claim." (citations omitted)).  Under these circumstances, the district court should have first granted summary judgment on plaintiffs' § 1983 claims and then dismissed plaintiffs' declaratory judgment claim for want of supplemental jurisdiction.  It was an abuse of discretion for the district court to have done otherwise.

**IV**

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment with respect to plaintiffs' § 1983 claims.  We **VACATE** the district court's grant of summary judgment with respect to plaintiffs' declaratory judgment claim, and remand with instructions to **DISMISS** the claim for want of jurisdiction.

Entered for the Court

Carlos F. Lucero
Circuit Judge