80 F.3d 320
 96 Cal. Daily Op. Serv. 2261, 96 Daily Journal
D.A.R. 3737
JONES INTERCABLE OF SAN DIEGO, INC., Plaintiff-Appellant,
v.
CITY OF CHULA VISTA; City Council of Chula Vista; Cliff
Swanson, as City Engineer; John Lippitt, as
Director of Public Works, Defendants-Appellees.
 No. 93-56397.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 4, 1995.
Opinion Filed Oct. 5, 1995.
Opinion Withdrawn April 2, 1996.
Decided April 2, 1996.
 
 Terry S. Bienstock, Philip J. Kantor, Bienstock & Clark, Miami, Florida; Jerold H. Goldberg, McDonald, Hecht & Solberg, San Diego, California, for plaintiff-appellant.
 Cindy A. Brand, Deborah M. Kornheiser, Howard J. Silldorf, Silldorf, Burdman, Dunignan & Eisenberg, San Diego, California; William M. Marticorena, Rutan & Tucker, Costa Mesa, California; Bruce M. Boogaard, Office of the City Attorney, Chula Vista, California; for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California, No. CV-91-01766-JNK; Judith N. Keep, Chief Judge, Presiding.
 Before: D.W. NELSON and CANBY, Circuit Judges, and TANNER,* District Judge.
 ORDER
 The opinion filed Oct. 5, 1995, is withdrawn.
 OPINION
 CANBY, Circuit Judge:
 
 I.
 
 1
 Jones Intercable of San Diego, Inc., brought this action in district court against the City of Chula Vista. Jones alleged that the City had denied Jones' constitutional and statutory rights when it refused to permit Jones to operate a cable television system in areas newly annexed by the City. The district court granted summary judgment to the City, and Jones appeals. We affirm the judgment of the district court with regard to all claims except the claim of taking of property without just compensation. That claim we order dismissed as unripe.
 
 II.
 
 2
 Jones operates cable television systems. In 1987, with the approval of the County of San Diego, Jones accepted assignment of a twenty-year license from the County to construct and operate a cable television system within the County. Pursuant to encroachment permits it received from the County, Jones proceeded with the construction of cable infrastructure upon public rights-of-way of the County. The cable infrastructure consists of a "head-end" facility equipped with a satellite dish that receives satellite-delivered television signals. It also includes a main cable trunk line and additional cable lines with which Jones delivers these television signals to its subscribers.
 
 
 3
 Two years later, the City annexed some previously unincorporated portions of the County. Jones had already installed cable infrastructure in parts of these areas. As provided by section 2(e) of Jones' license with the County, the County's rights under the license inured to the benefit of the City for purposes of the newly annexed areas. The City required Jones to apply for a city-wide franchise and to serve a broader area in order to operate its cable system within the City. Jones submitted an application for a franchise to the City, but later withdrew its application. Jones then applied to the City for encroachment and construction permits to continue laying cable in the newly annexed areas. The City denied these applications.
 
 
 4
 Jones then filed a suit in San Diego Superior Court that included several causes of action and requested a preliminary injunction allowing Jones to install coaxial cable, conduit and related equipment in trenches that were temporarily open in newly annexed portions of the City. The Superior Court granted the preliminary injunction so that Jones could install the equipment before the trenches were closed. Although Jones was allowed to continue installing cable infrastructure in open trenches, the injunction did not allow Jones to service cable customers or enter into contracts to supply cable service. The superior court subsequently dismissed the state action on the ground that Jones failed to exhaust its administrative remedies, and Jones appealed.[1]
 
 
 5
 While its state appeal was pending, Jones filed the present action in federal district court, alleging that the City had violated several of Jones' federal statutory and constitutional rights. The district court also granted Jones a preliminary injunction allowing it to lay cable in open trenches in the City. The City moved for summary judgment, arguing among other things that Jones was precluded from recovering damages from the City by 47 U.S.C. § 555a(a), which limits remedies against governmental entities regulating cable service to injunctive and declaratory relief. In response, Jones argued that, if section 555a(a) applied, it resulted in an unconstitutional taking of the cable infrastructure Jones had already installed in the newly incorporated sections of the City. Jones also raised other constitutional challenges to section 555a(a). After rejecting each of Jones' constitutional challenges to section 555a(a), the court concluded that, because Jones recently had sold the equipment necessary to service the City and no longer desired to serve the City, its claim for declaratory and injunctive relief was moot. The court granted summary judgment to the City.
 
 
 6
 Jones appeals the district court's grant of summary judgment to the City on several grounds.[2]
 
 III.
 A. Jones' Takings Claim is not Ripe
 
 7
 The district court rejected Jones' taking claim on the ground that injunctive and declaratory relief remained available. It also observed that much of the infrastructure in issue had been installed by Jones under preliminary injunctions sought by Jones at a time when its cable rights were contested. The district court also pointed out that Jones' property was not deprived of all value, because Jones could, and did, sell its infrastructure.
 
 
 8
 There is a threshold issue, however, that prevents us from addressing the merits of the district court's ruling. Whether Jones' takings claim is ripe for review is a question of law affecting our subject matter jurisdiction. Del Monte Dunes v. City of Monterey, 920 F.2d 1496, 1500 (9th Cir.1990). We review de novo the district court's implicit decision that Jones' claim is ripe for review. Id.
 
 
 9
 In order for Jones' claim that the City took its property without just compensation to be ripe for federal judicial review, Jones was required first to seek compensation through California's inverse condemnation proceedings. Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1402 (9th Cir.1989), cert. denied sub nom., Doody v. Sinaloa Lake Owners Ass'n, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990) (citing Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). Although Jones attempted to assert a late inverse condemnation claim in state court for the taking of its right to provide services, it never presented a claim for the taking of its infrastructure by rendering it useless. More important, Jones' state court action contesting the validity of Chula Vista's regulatory requirement was still pending when it brought this action, and apparently remains pending to this day. A regulatory taking claim is not ripe until the decision of the regulating authority has become final. Williamson County, 473 U.S. at 186, 105 S.Ct. at 3116. We conclude that Jones' taking claim is premature, and we cannot entertain it. Id. Having disposed of Jones' taking claim on ripeness grounds, we do not decide whether the district court's analysis of the merits of the claim was correct.
 
 
 10
 B. Section 555a is Applicable to this Action
 
 
 11
 Jones asserted claims for damages in addition to those for taking of its property; it also sought damages and attorneys' fees for violations of the First, Fifth and Fourteenth Amendments and the Cable Communications Policy Act of 1984, 47 U.S.C. § 521 et seq. Because damages are precluded if section 555a(a) applies and is valid, Jones' remaining contentions are addressed to that statute. Section 555a(a) provides:
 
 
 12
 In any court proceeding pending on or initiated after October 5, 1992, involving any claim against a franchising authority or other governmental entity ... arising from the regulation of cable service or from a decision of approval or disapproval with respect to a grant, renewal, transfer, or amendment of a franchise, any relief, to the extent such relief is required by any other provision of Federal, State, or local law, shall be limited to injunctive relief and declaratory relief.
 
 
 13
 47 U.S.C. § 555a(a).
 
 
 14
 Jones first argues that section 555a(a) does not apply to its claim because the claim does not arise out of the City's "regulation of cable service" within the meaning of the statute. This contention is utterly without merit. It is difficult to see what the City was doing, if not regulating, when it precluded Jones from installing more cable infrastructure and from servicing customers unless Jones first obtained a city-wide franchise.[3] The fact that Jones challenges the City's power to regulate does not mean that Jones' action does not arise from the regulation of cable service. Whether or not the City's application of its permitting and franchising regulations to Jones was fair or valid is a separate question from whether or not application of these regulations falls within section 555a(a)'s definition of "regulation." The clear answer to the latter question is that it does. The district court did not err in concluding that section 555a(a) was applicable.
 
 
 15
 C. Section 555a(a) Does Not Violate Jones' First Amendment Rights
 
 
 16
 Jones raises very broad First Amendment and equal protection issues in its attacks upon section 555a(a). It is important to keep in mind, however, exactly what Jones is trying to do. Jones had a franchise to serve unincorporated areas of the County. That franchise required Jones to operate its system "in strict compliance with all laws, ordinances, and regulations of the county, the state, and the federal government." The franchise also provided that if any area served were annexed or incorporated, "the rights reserved to the County under this license shall inure to the benefit of that incorporated city."
 
 
 17
 When the City annexed the areas in issue, it sought to require Jones to comply with the City's laws (fashioned to comply with state law requirements) for the supply of cable services within the City. One of those requirements was "over-building," which meant that Jones would have to expand its operation to serve most or all of the City, and could not confine itself to the areas recently annexed. Jones applied for a City permit, but later withdrew its application. Jones has since insisted upon its right to serve the annexed portions only, without complying with the City's regular requirements for broader service. Thus Jones is in no position to attack, on Equal Protection or First Amendment grounds, the City's general regulation of cable services or the City's failure to issue Jones a city-wide permit. Instead, Jones asserts only the right to serve the annexed areas under the County franchise, even though the City and not the County is now the regulatory authority for those areas.
 
 
 18
 As a consequence of its litigating position, Jones' attack on the constitutionality of section 555a(a) is necessarily limited to the contention that it violates the First Amendment or the Equal Protection Clause to deny Jones damages for the City's alleged wrongful refusal to permit it to operate in the annexed areas without a city-wide franchise. When Jones' constitutional claims are viewed in this less-than-cosmic context, they do not appear to be substantial. We decline Jones' invitation to rule broadly on the constitutionality of section 555a(a) in other, hypothetical applications. Section 555a(a) applies to conduct as well as speech, and encompasses many potential activities having no expressive function. We therefore confine our consideration of its constitutionality to its effect as applied to Jones. See Broadrick v. Oklahoma, 413 U.S. 601, 615-16, 93 S.Ct. 2908, 2917-18, 37 L.Ed.2d 830 (1973).
 
 
 19
 Jones argues that section 555a(a) violates its rights under the First Amendment by limiting its ability to engage in protected expression.[4] Jones is not simply attempting to engage in pure speech, however. It is attempting to render cable service across the rights-of-way of the City. Section 555a(a) does not directly interfere with speech rights of Jones; it simply deprives Jones of a damages remedy if the City acted wrongfully in denying Jones permission to serve the annexed areas.
 
 
 20
 Jones is clearly wrong in urging that we must review section 555a(a) under a standard of strict scrutiny. Section 555a(a)'s prohibition of damages is content-neutral. The prohibition applies to all cable operators, no matter what kind of message they may be delivering. The Supreme Court has recently made clear that a content-neutral regulation of cable television is not to be subjected to the standard of strict scrutiny. Turner Broadcasting System, Inc. v. FCC, --- U.S. ----, ---- - ----, 114 S.Ct. 2445, 2464-69, 129 L.Ed.2d 497 (1994). In Turner, the Court dealt with a challenge to the "must-carry" rules of the Cable Television Consumer Protection and Competition Act of 1992, which required cable operators to carry local broadcast television stations. The Court held that the "must carry" rules were subject to the "intermediate level of scrutiny applicable to content-neutral restrictions that impose an incidental burden on speech." Id. at ----, 114 S.Ct. at 2469. Under intermediate level scrutiny, a regulation will be upheld if
 
 
 21
 it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
 
 
 22
 United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). To satisfy this test, a regulation must promote a substantial government interest that would not be achieved as effectively absent the regulation. Turner, --- U.S. at ----, 114 S.Ct. at 2469 (citing Ward v. Rock Against Racism, 491 U.S. 781, 799, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989)). We will "accord substantial deference to the predictive judgments of Congress," although the City must show that "in formulating its judgments, Congress has drawn reasonable inferences based on substantial evidence." Id. at ----, 114 S.Ct. at 2471.
 
 
 23
 As applied to Jones in this case, section 555a(a) satisfies the O'Brien test. Congress found that, prior to passage of section 555a(a), municipalities were facing unexpected and "potentially crippling" civil damage liability claims in relation to their regulation of cable operators.[5] See Daniels Cablevision, Inc. v. United States, 835 F.Supp. 1, 11-12 (D.D.C.1993). In response, Congress exempted municipalities from civil damages liability arising out of the local regulation of cable services in order "to preserve the municipal franchising and regulation scheme envisioned by the [Cable Communications Policy Act of 1984]." Id. at 12.
 
 
 24
 We conclude that section 555a(a) promotes Congress's substantial interest in having municipalities regulate cable operators without fear of potentially overwhelming damage awards. The statute is aimed at improving Congress's scheme for regulating cable systems, not at suppressing particular viewpoints held by cable system operators. We need not resolve the question whether the requirement of "narrow tailoring" for cable regulation is satisfied if the government interest would be served less effectively without the regulation, or whether there must be an additional showing that the means chosen do not burden substantially more speech than necessary to further the government interest. See U.S. West, Inc. v. United States, 48 F.3d 1092, 1104 (9th Cir.1994). Both tests are met. Legislative findings of the damage claims municipalities faced before the civil immunity provision became law demonstrate that Congress's goal of giving municipalities the ability to regulate without fear of large damage awards would not be served as well absent the provision. Moreover, any relaxation of the prohibition on damages would impose some regulatory cost on the City. And as applied to Jones, the damages preclusion does not burden substantially more speech than necessary.
 
 
 25
 The incidental effect on Jones' speech is very limited. Jones retained its injunctive remedy, and it made use of preliminary injunctions to lay its cable in the City's open trenches even though the City contested its right to provide service. Permanent injunctive relief was available to Jones if the City proved to be wrong and Jones elected to pursue that remedy. Jones thus could have put an end to any unlawful interference by the City with Jones' cable operation. It is true that Jones could not recover damages for any past period during which it was able to provide service but was wrongfully prevented by the City from doing so. But such a denial of full relief, in light of the remedies available to Jones, is constitutionally permissible. In Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court refused to imply a damages remedy for a civil servant whose First Amendment rights were allegedly infringed, because the civil service system provided a system of relief. The fact that the existing remedies did not provide complete relief was not sufficient to require implication of a damages remedy. Id. at 388, 103 S.Ct. at 2416-17. See also Kotarski v. Cooper, 866 F.2d 311, 312 (9th Cir.1989) (civil service remedial scheme precludes implication of damages remedy for denial of civil servant's First Amendment rights, even though remedial scheme provided no meaningful remedy for employees in probationary status); cf. Schweiker v. Chilicky, 487 U.S. 412, 427-28, 108 S.Ct. 2460, 2469-70, 101 L.Ed.2d 370 (1988) (where parties are restored to statutory entitlements that were unconstitutionally interrupted, Constitution does not require additional damages remedy for the constitutional violation itself). Here, too, Congress has left injunctive and declaratory remedies in place; the denial of damages is constitutionally permissible.
 
 
 26
 Jones has presented us with a limited First Amendment claim. The City allegedly interfered, in a content-neutral manner, with Jones' service of the annexed areas. Jones availed itself of preliminary injunctive remedies and could have pursued permanent ones. Given this context, we have no reason to opine whether section 555a(a) could ever, in other circumstances, run afoul of the First Amendment. Having performed the kind of balancing prescribed by Turner, we conclude that section 555a(a) does not violate Jones' rights of free speech in this case.[6]
 
 
 27
 D. Section 555a(a) Does Not Violate Jones' Right to Equal Protection of the Laws
 
 
 28
 Jones also argues that section 555a(a) violates its right to equal protection of the laws.[7] Much of Jones' argument is directed toward securing review under the standard of strict scrutiny, on the ground that Jones' First Amendment rights are implicated. That contention has largely been disposed of in the First Amendment discussion above. See R.A.V. v. City of St. Paul, 505 U.S. 377, 384-85 n. 4, 112 S.Ct. 2538, 2543-44 n. 4, 120 L.Ed.2d 305 (Court occasionally fuses First Amendment into Equal Protection Clause in cases of content regulation, but makes clear that First Amendment underlies its analysis). Section 555a(a) is content-neutral, and accordingly does not trigger strict scrutiny under either the First Amendment or the Equal Protection Clause. Turner, --- U.S. at ----, 114 S.Ct. at 2469; see Police Dep't of Chicago v. Mosley, 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972) (content discrimination subject to same condemnation under Equal Protection Clause as under First Amendment). Section 555a(a), as we have said, does not violate Jones' rights of speech under an intermediate standard of review.
 
 
 29
 The only twist that is added by Jones' equal protection argument is the contention that cable operators have been unfairly singled out and deprived of a damages remedy, in comparison with other entertainment-related businesses, and other franchised service providers. Others in the entertainment business, however, are not similarly situated. Only cable operators have been subjected by Congress to a local government franchising scheme. Cable system operators are singled out for regulation by cities according to federal standards under the Cable Communications Policy Act of 1984 and the Cable Television and Consumer Protection and Competition Act of 1992.
 
 
 30
 Whether the applicable standard of equal protection review is one of rational basis or some intermediate standard, there is ample justification for Congress's precluding damages only for the cable operators that it was subjecting to local government franchising power. There was no need to render cities immune from damages with regard to broadcasters, for example, because broadcasters were not made subject to local franchise requirements. There is also substantial justification for Congress's choice to subject cable and not broadcast systems to local regulation: cable intrudes on city property and city operations in ways that broadcasting obviously does not. As the Supreme Court noted in FCC v. Beach Communications, Inc., 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993):In establishing the franchise requirement, Congress had to draw the line somewhere; it had to choose which facilities to franchise. This necessity renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally.
 
 
 31
 Id. at 316, 113 S.Ct. at 2102.
 
 
 32
 Congress's choice not to regulate or preclude damages remedies for water, gas and electric companies is equally justifiable. These well-established utilities have been subject to state regulation for decades or centuries. There has been no showing that their regulation has led to damages actions that threatened the cities' fisc. Moreover, provision of these services to retail consumers has never been a matter of substantial federal attention. Congress's protective reasons for precluding damages remedies arising from franchising in the new and developing cable industry, recently subjected to local government franchise regulation, simply did not apply to water, gas and electric companies.
 
 
 33
 Congress also made clear that it had unique reasons for creating an immunity from damages that would encourage the franchising of cable systems, as opposed to non-communicative utilities. Congress wanted cable systems to "provide the widest possible diversity of information services and sources to the public, consistent with the First Amendment's goal of a robust marketplace of ideas ..." H. Rep. No. 934, 98th Congress, 2d Sess. 19 (1984), reprinted in 1984 U.S.C.C.A.N. 4655, 4656. These First Amendment concerns are served by the immunity and they are not applicable to utilities like water, gas and electricity.
 
 
 34
 We conclude that Congress did not violate the equal protection component of the Fifth Amendment by making section 555a(a) applicable to Jones, as a cable operator, and not to others in the entertainment or utilities industries.
 
 
 35
 E. Section 555a(a) Is Not Unconstitutionally Vague
 
 
 36
 We agree with the district court that section 555a(a) is not unconstitutionally vague. Contrary to Jones' arguments, section 555a(a) does not give municipalities greater discretion in regulating cable system operators than they otherwise have. Municipalities' authority over cable systems is provided by various provisions of the 1984 and 1992 Acts. Section 555a(a) simply limits the type of judicial relief available to cable system operators. Jones is incorrect in arguing that section 555a(a) itself gives local franchising authorities broad discretion to decide which regulations to apply to cable systems operators.
 
 
 37
 F. Jones' Claim For Injunctive or Declaratory Relief is Moot
 
 
 38
 Prior to the entry of the district court's decision, Jones sold its cable infrastructure that is involved here. It is clear from the record that Jones no longer has the ability or the desire to operate a cable system within the City. We agree with the district court that Jones' claim for injunctive or declaratory relief is therefore moot.
 
 IV.
 
 39
 Jones' claim for unconstitutional taking of property without just compensation is unripe; we therefore vacate the portion of the district court's judgment addressing the merits of that claim. We remand the taking claim to the district court with instructions to dismiss it as unripe.
 
 
 40
 Section 555a(a) precludes Jones' other claims for damages, and his claims for injunctive and declaratory relief are moot. With regard to these matters, we affirm the judgment of the district court.
 
 
 41
 The City is entitled to its costs.
 
 
 42
 AFFIRMED IN PART; VACATED AND REMANDED IN PART, with instruction.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 [1]
 The state superior court decision was reversed in an unpublished decision in 1993, and the matter was remanded for trial
 
 
 [2]
 We review de novo a district court's grant of summary judgment. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994)
 
 
 [3]
 We find no merit in Jones' contention that the term "regulation of cable services" is unconstitutionally vague. Persons of common intelligence are not forced to guess at the phrase's meaning. See Broadrick v. Oklahoma, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973)
 
 
 [4]
 Jones integrates its First Amendment argument into its Equal Protection argument, but we find it useful to address the two issues separately
 
 
 [5]
 See S.Rep. No. 92, 102d Cong., 2d Sess. 48-49 (1992), reprinted in 1992 U.S.C.C.A.N. 1133, 1181-82 (in reaffirming the authority of local franchising authorities to make cable franchising decisions in the Cable Communications Policy Act of 1984, Congress never contemplated that local authorities would be subject to liability for monetary damages in connection with the franchising process that explicitly permitted by the Act. Nevertheless, several municipalities have been sued for damages by cable operators in connection with franchising decisions. "[T]he mere pendency of these large damage claims has had significant adverse effects on the functioning of local governments. These claims represent a potentially crippling burden on local government treasuries ..." To avoid the adverse effects of having such large claims pending, "franchising authorities faced with these lawsuits are having to settle rather than risk large judgments....")
 
 
 [6]
 We note that the "must carry" rules in Turner raised more direct First Amendment concerns than does section 555a(a). Even though the rules in Turner were determined not to constitute content regulation, they did "interfere with cable operators' editorial discretion by compelling them" to carry broadcast stations. Turner, --- U.S. at ----, 114 S.Ct. at 2460. Section 555a(a) raises no such editorial concern
 
 
 [7]
 Jones invokes both the Fourteenth and the Fifth Amendment. Because section 555a(a) is a federal statute, the equal protection component of the Fifth Amendment applies. The Fifth and Fourteenth Amendment analyses are the same. See Buckley v. Valeo, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976)