**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

COMCAST OF SACRAMENTO I, LLC;
COMCAST OF SACRAMENTO II, LLC;
COMCAST OF SACRAMENTO III, LLC,
*Plaintiffs-Appellants/
Cross-Appellees*,

v.

SACRAMENTO METROPOLITAN
CABLE TELEVISION COMMISSION,
*Defendant-Appellee/
Cross-Appellants.*

Nos. 17-16847
17-16923

D.C. No.
2:16-cv-01264-
WBS-EFB

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted December 17, 2018
San Francisco, California

Filed May 8, 2019

Before: Consuelo M. Callahan and N. Randy Smith,
Circuit Judges, and Fernando M. Olguin,[*] District Judge.

Opinion by Judge N.R. Smith

---

[*] The Honorable Fernando M. Olguin, United States District Judge for the Central District of California, sitting by designation.

## SUMMARY[**]

### Cable Franchise Fees

The panel vacated the district court's summary judgment and held that 47 U.S.C. § 555a(a) barred the only relief sought by Comcast of Sacramento in its lawsuit concerning the calculation and payment of cable franchise fees.

Under 47 U.S.C. § 555a(a), local authorities and municipalities, involved in the regulation of cable television services within their boundaries, are exempted from civil money damages liability in any lawsuit for any claim arising from the regulation of cable services.

As an initial matter, the panel rejected Comcast's argument that the Sacramento Metropolitan Cable Television Commission (the "Commission") waived any argument relying on 47 U.S.C. § 555a(a). The panel held that the issue was raised and addressed by the district court *sua sponte*, and the Commission's briefs sufficiently raised the issue for purposes of appeal.

The panel held that Comcast pleaded claims of conversion and common count, both intended to obtain a return of the security deposit paid to the Commission by Comcast's predecessor in interest under the terms of a franchise agreement, and these claims seek an award of money damages (and not injunctive or declaratory relief) and are brought against a cable franchising authority. The panel

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

further held that Comcast's lawsuit, as pleaded, arose from cable regulation. The panel concluded that the lawsuit was subject to the bar provided by § 555a(a), and must be dismissed on that basis.

The panel instructed the district court to enter an order on remand, dismissing the lawsuit without prejudice. The panel rejected Comcast's argument that it was left without any possible means of obtaining the return of its security deposit.

**COUNSEL**

Fred A. Rowley, Jr. (argued), Jeffrey Y. Wu (argued), and Aaron Pennekamp, Munger Tolles & Olson LLP, Los Angeles, California; Donald B. Verrilli Jr., Munger Tolles & Olson LLP, Washington, D.C.; Jill B. Rowe, Scott M. McLeod, and Patrick M. Rosvall, Cooper White & Cooper LLP, San Francisco, California; for Plaintiffs-Appellants/Cross-Appellees.

Harriet A. Steiner (argued) and Joshua Nelson, Best Best & Krieger LLP, Sacramento, California, for Defendant-Appellee/Cross-Appellant.

Allison W. Meredith and Jeremy B. Rosen, Horvitz & Levy LLP, Burbank, California, for Amicus Curiae California Chamber of Commerce.

Karin Dougan Vogel, J. Aaron George, and Gardner Gillespie, Sheppard Mullin Richter & Hampton LLP, Washington, D.C., for Amicus Curiae California Cable & Telecommunications Association.

Jeffrey M. Bayne, Tillman L. Lay, and James N. Horwood, Spiegel & McDiarmid LLP, Washington, D.C., for Amici Curiae The Alliance for Community Media and The Alliance for Communications Democracy.

Travis Van Ligten and Jeffrey T. Melching, Rutan & Tucker LLP, Costa Mesa, California, for Amici Curiae League of California Cities, California State Association of Counties, and Scan Natoa, Inc.

**OPINION**

N.R. SMITH, Circuit Judge:

Under federal law, local authorities and municipalities, involved in the regulation of cable television services within their boundaries, are exempted from civil money damages liability in any lawsuit for any claim arising from the regulation of cable services. *See* 47 U.S.C. § 555a(a).

This lawsuit concerns the calculation and payment of cable franchise fees. Because Comcast of Sacramento ("Comcast") seeks money damages in this suit, brings it against a municipality, and the suit arises out of the regulation of cable services, 47 U.S.C. § 555a(a) bars the only relief sought by Comcast. Thus, we vacate the district court's grants of summary judgment and remand with instructions to dismiss Comcast's lawsuit.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**Cable Industry Background**

Historically, cable operators pay a fee to local and/or state governments in order to provide service within a particular jurisdiction, usually referred to as a franchise fee. These fees have been justified by the fact that cable operators use public rights-of-way, maintained by the local governmental entities, to deliver their services.

Prior to the 1980s, the Federal Communications Commission ("FCC") largely left cable franchise regulation to local governments. However in 1984, the FCC determined that many local authorities were imposing varying and often high franchise fees, and that those fees were impeding the growth of the cable television industry. Thus, Congress enacted the Cable Communications Policy Act (the "Cable Act") of 1984.

The Cable Act imposes a uniform set of franchise procedures and standards, authorizes local authorities to collect fees in connection with the grant of a cable franchise, but caps those fees at 5% of a cable company's gross revenues. *See* 47 U.S.C. § 542(a), (b). Franchise fees are defined, and include any tax, fee, or assessment imposed on "a cable operator or cable subscriber, or both, solely because of their status as such." *Id*. § 542(g)(1); *see also* § 542(b). Franchise fees do not include "any tax, fee, or assessment of general applicability (including any such tax, fee, or assessment imposed on both utilities and cable operators or their services but not including a tax, fee, or assessment which is unduly discriminatory against cable operators or

cable subscribers)." *Id*. § 542(g)(2)(A). The Cable Act also expressly preempts any inconsistent state law. *Id.* § 556(c).

Several years later, Congress determined that the delegation of cable franchising authority had resulted in an unanticipated development: municipalities were being sued for damages by cable operators in connection with cable franchising decisions. *See Jones Intercable of San Diego, Inc. v. City of Chula Vista*, 80 F.3d 320, 326 n.5 (9th Cir. 1996) (citing S. Rep. No. 92, 102d Cong., 2d Sess. 48–49 (1992), *as reprinted in* 1992 U.S.C.C.A.N. 1133, 1181–82); *see also id.* ("[T]he mere pendency of these large damage claims has had significant adverse effects on the functioning of local governments. These claims represent a potentially crippling burden on local government treasuries . . . ." (alterations in original)). In response, Congress enacted the Cable Television Consumer Protection and Competition Act of 1992. Among other things, that Act provides that:

> *In any court proceeding* pending on or initiated after October 5, 1992, *involving any claim against a franchising authority or other governmental entity*, or any official, member, employee, or agent of such authority or entity, *arising from the regulation of cable service* or from a decision of approval or disapproval with respect to a grant, renewal, transfer, or amendment of a franchise, *any relief*, to the extent such relief is required by any other provision of Federal, State, or local law, *shall be limited to injunctive relief and declaratory relief*.

47 U.S.C. § 555a(a) (emphasis added).

Then in 1996, Congress enacted the Telecommunications Act, which sought to increase competition by allowing non-traditional cable companies to enter state cable markets. However, few were able to successfully enter the California market. This inability to enter that market resulted, in part, from a number of traditional cable companies being well established in California. The inability was also partly attributable to the fact that local and municipal governments within California imposed varied, often onerous franchise requirements that, in effect, created barriers to new market entrants.

In order to encourage competition in the cable television market, the California legislature enacted the Digital Infrastructure and Video Competition Act ("DIVCA") in 2006. DIVCA stripped local governments of their ability to grant cable franchises and established the California Public Utilities Commission ("CPUC") as "the sole franchising authority for a state franchise to provide video service." Cal. Pub. Util. Code § 5840(a). Under DIVCA, local governments continued to impose and collect "franchise fees" as a form of rent for video service providers' use of public rights-of-way, but those fees were and are capped at 5% of the providers' gross revenues. *Id.* § 5840(q)(1). DIVCA also permits cable operators to "identify and collect the amount of the state [or local] franchise fee as a separate line item on the regular bill of each subscriber." *Id.* § 5860(j). Sacramento County has enacted an ordinance that requires each cable franchise operating within the county to pay a franchise fee "equal to five (5) percent per year of the Franchisee's annual Gross Revenues." Sac. Cty. Code § 5.50.602.

DIVCA also authorizes the CPUC to collect from each cable franchise an annual fee in an amount necessary "to

carry out the provisions of [DIVCA]." Cal. Pub. Util. Code § 441. This is known as a "CPUC fee." However, DIVCA requires that the CPUC fee must be applied in a manner consistent with the Cable Act's 5% franchise fee cap. *Id*. § 442(b).

DIVCA additionally permits local governments to assess public, educational and governmental ("PEG") fees in a manner consistent with federal law, *id.* § 5870(n), and in an amount not to exceed "1 percent of the holder's gross revenues, as defined in Section 5860." *Id*. Cable operators may pass those fees on to their subscribers and thereby recover "any fee remitted to a local entity under this section by billing a recovery fee as a separate line item on the regular bill of each subscriber." *Id*. § 5870(o). The city of Sacramento has enacted an ordinance imposing such a fee. *See* Sac. Mun. Code § 5.28.2670(C)(1).[1]

**The Present Dispute**

Both before and after the enactment of DIVCA, Sacramento Metropolitan Cable Television Commission ("SMCTC") regulated the provision of cable television services in Sacramento and the surrounding area. Comcast (or Comcast's predecessors in interest, all entities hereafter referred to as "Comcast") offered cable television services in the Sacramento area for years prior to the enactment of DIVCA. Prior to 2008, Comcast was the beneficiary of a franchise issued by SMCTC. As part of that franchise,

---

[1] The Sacramento ordinance actually imposes a PEG fee equal to 3% of a cable operator's gross revenue, but the parties do not dispute that DIVCA limits the fee to 1% of gross revenue, and SMCTC has not attempted to collect any amount greater than that from Comcast.

Comcast's predecessor had been required to pay a deposit to SMCTC. Following the enactment of DIVCA, Comcast transitioned over to a franchise issued by the CPUC, and the franchise agreement with SMCTC terminated by operation of law in 2011. Comcast was not required to pay a deposit under the CPUC franchise agreement, and the parties do not dispute that the pre-existing deposit (paid to SMCTC) was to be returned to Comcast upon expiration of the SMCTC franchise agreement. However, SMCTC did not return the deposit following the termination of the SMCTC franchise agreement; instead SMCTC continued to hold the deposit in an interest bearing trust account. Though the record does not suggest that SMCTC had any legal authority to continue to hold Comcast's deposit, Comcast did not immediately request its return.

After the SMCTC franchise had terminated, Comcast continued to pay its annual franchise fee to SMCTC (as rent for use of the public rights-of-way), as required by DIVCA. However, in October 2011, Comcast informed SMCTC by letter that it would deduct the CPUC fee from the franchise fees paid during the 3rd quarter of 2011 and going forward thereafter because, in Comcast's view, the CPUC fee "qualifies as a 'franchise fee' under federal law" that counted towards the Cable Act's 5% franchise fee cap. Additionally, Comcast informed SMCTC that it would not include the PEG fees it paid to SMCTC as part of the "gross revenues" calculation that formed the basis for Comcast's annual franchise fee obligations.

Though SMCTC does not appear to have responded immediately to Comcast's October 2011 letter, SMCTC eventually informed Comcast that it disagreed with Comcast's interpretation of applicable provisions of state and

federal law. Following an audit performed in 2014, SMCTC demanded that Comcast remit the withheld amounts for that period, an amount totaling $334,610. The parties exchanged several additional letters over the months that followed, outlining their disagreement concerning the appropriate calculation of CPUC and PEG fees due under state and federal law. In an October 2014 letter sent by SMCTC, SMCTC informed Comcast that, because Comcast had paid less in franchise fees than SMCTC believed was due for fiscal years 2011 and 2012, SMCTC would begin offsetting the amount Comcast owed against Comcast's security deposit unless Comcast promptly paid the amounts it had withheld. Comcast declined to pay the amounts SMCTC claimed it owed; instead, it demanded a return of its security deposit. SMCTC refused and instead responded to Comcast's demand in March 2015 by moving Comcast's deposit out of the trust account and into SMCTC's general fund.

In June 2016, Comcast brought suit against SMCTC, asserting state law claims for conversion and common count. Both claims ultimately seek a return of Comcast's security deposit, which, with accrued interest, totaled $227,639.45. SMCTC did not contest those counts but instead argued as affirmative defenses that: (1) the CPUC fees did not constitute "franchise fees" for purposes of the Cable Act's 5% cap, and that Comcast therefore was not permitted to offset those fees against the franchise fees due to SMCTC; and (2) PEG fees counted towards "gross revenues" from which the franchise fee would be determined, and Comcast

could not exclude those fees when calculating its franchise fee obligations.[2]

The parties filed cross-motions for summary judgment, and the district court granted each motion in part following a hearing. It found for SMCTC on the franchise fee issue, reasoning that the CPUC fee did not constitute a "franchise fee" and had been improperly withheld by Comcast. *Comcast of Sacramento I, LLC v. Sacramento Metro. Cable Television Comm'n*, 250 F. Supp. 3d 616, 626 (E.D. Cal. 2017). However, the district court found for Comcast on the PEG fee issue, determining that Comcast had properly excluded those fees from its "gross revenue" calculations, because those fees fell within DIVCA's express exclusion for "amounts billed to, and collected from, subscribers to recover . . . [a] . . . fee imposed by [a] governmental entity." *Id*. (alterations in original and quotation marks omitted).

Though SMCTC hadn't raised the issue, the district court considered sua sponte whether Comcast's lawsuit was barred under 47 U.S.C. § 555a(a). After considering that provision, the district court found that § 555a(a) did not bar Comcast's suit. The court was not convinced "that this action 'aris[es] from the regulation of cable service' under section 555a." *Id*. at 627 n.5 (alterations in original). However, the district court noted that it had found few precedential appellate decisions concerning the application of § 555a(a). Nonetheless, the few decisions the court located "indicate that section 555a was meant to bar claims arising directly out of

---

[2] SMCTC also raised a statute of limitations defense and a statutory immunity defense but both arguments were rejected by the district court. SMCTC has not challenged the district court's findings regarding either of these defenses on appeal.

cable regulation, as opposed to claims that are only tangentially related to cable regulation." *Id*. (citation omitted). Comcast moved for reconsideration regarding the CPUC fee finding, but that motion was denied.

Both parties timely appealed, and this appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

We review de novo a district court's decision on cross-motions for summary judgment. *Center for Bio-Ethical Reform Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008) ("When presented with cross-motions for summary judgment, we review each motion for summary judgment separately, giving the nonmoving party for each motion the benefit of all reasonable inferences."). "The interpretation and construction of statutes are questions of law reviewed de novo." *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1041 (9th Cir. 2001).

## III. DISCUSSION

Because Comcast's lawsuit must be dismissed as pleaded if 47 U.S.C. § 555a(a) bars the relief sought, we first consider the application of that provision to Comcast's lawsuit for the return of the security deposit. Because § 555a(a) applies and bars Comcast's lawsuit as pleaded, we resolve this appeal on that basis.

### A.

As an initial matter, Comcast argues that SMCTC has waived any argument relying on 47 U.S.C. § 555a(a), either

by failing to raise such an argument before the district court or by failing to raise such an argument in its opening brief.

Though "[w]e apply a 'general rule' against entertaining arguments on appeal that were not presented or developed before the district court," *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (internal quotation marks omitted), this issue was raised and addressed by the district court sua sponte. As the application of 47 U.S.C. § 555a(a) to this lawsuit was "raised sufficiently for the trial court to rule on it," *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d at 992 (internal quotation marks omitted), the waiver rule does not have obvious application here. Even if a colorable argument for waiver could be made, "[s]uch waiver is a discretionary, not jurisdictional, determination." *Id.* Where, as here, "the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed," *Davis v. Elec. Arts Inc*., 775 F.3d 1172, 1180 (9th Cir. 2015) (citations omitted), we may exercise our discretion and consider it. *See also United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003) (finding that "when the district court *sua sponte* raises and explicitly resolves an issue of law on the merits" it may be considered on appeal even if the party relying on that issue "failed to raise the issue in district court").

Additionally, SMCTC's opening brief addresses the district court's finding that the lawsuit did not arise from the regulation of cable services and by extension its finding that § 555a does not apply here. SMCTC also expands upon that argument in its reply brief. Thus SMCTC's briefs sufficiently raise this issue for purposes of appeal.

**B.**

As we have previously explained, "prior to passage of section 555a(a), municipalities [faced] unexpected and 'potentially crippling' civil damage liability claims in relation to their regulation of cable operators." *Jones*, 80 F.3d at 326 (quoting *Daniels Cablevision, Inc. v. United States*, 835 F. Supp. 1, 11–12 (D.D.C. 1993)). In response, Congress enacted § 555a(a), and thereby "exempted municipalities from civil damages liability arising out of the local regulation of cable services in order to 'preserve the municipal franchising and regulation scheme envisioned by the [Cable Act].'" *Id.* (quoting *Daniels*, 835 F. Supp. at 12). Section 555a(a) applies "[i]n any court proceeding . . . involving any claim against a franchising authority . . . arising from the regulation of cable service," and limits the relief available in such actions to "injunctive relief and declaratory relief." *See Jones*, 80 F.3d at 324 (noting that "damages are precluded if section 555a(a) applies"); *Caprotti v. Town of Woodstock*, 721 N.E.2d 957, 960 (N.Y. 1999) ("By its plain and unconditional terms, section 555a(a) grants a local municipality broad immunity from monetary liability that arises out of any of the municipality's regulatory decisions involving cable television." (internal quotation marks omitted)).

In this case, Comcast pleaded claims of conversion and common count, both intended to obtain a return of the security deposit paid to SMCTC by Comcast's predecessor in interest under the terms of Comcast's prior (and now expired) franchise agreement. As these claims both seek an award of money damages (and not injunctive or declaratory relief) and are unquestionably brought against a cable franchising

authority, Comcast's lawsuit would be barred by this statute if it arises from cable regulation.

We find that Comcast's lawsuit, as pleaded, does indeed arise from cable regulation. Though Comcast's complaint does not mention or obviously concern cable regulation, Comcast's complaint cannot be viewed in isolation, nor can the claims pleaded therein be accepted at face value. *See Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 (9th Cir. 1986) ("A plaintiff will not be allowed to conceal the true nature of a complaint through artful pleading." (internal quotation marks and citation omitted)); *see also Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 945 (9th Cir. 2006). Comcast argues that its lawsuit merely seeks a return of a security deposit, but this argument glosses over the fact that the security deposit at issue was paid pursuant to a cable franchising agreement that established the terms under which Comcast could offer cable television services in Sacramento and the surrounding area. Thus, however pleaded, Comcast's lawsuit arises from a franchising agreement that plainly regulated cable services and has more than a tangential connection with cable regulation.

Moreover, both SMCTC's responsive pleadings and the course of this litigation to date further underscore the connection. SMCTC's answer includes (as an affirmative defense) a setoff claim under California law, arguing that SMCTC retained Comcast's security deposit to offset Comcast's underpayment of its franchise fees in the years (i.e., fiscal years 2011 and 2012) following the expiration of the previous SMCTC issued franchise agreement. SMCTC's answer also alleges that the parties were unable to agree what cable franchise fees were due for that period of time, and how

those fees should be calculated under the applicable provisions of state and federal law. Those particular allegations are bourne out in the pleadings, arguments, and evidentiary materials produced by the parties during the course of this litigation. These materials demonstrate that both parties have colorable arguments for their respective franchise fee calculations, but these materials also demonstrate that the relief sought by Comcast, however pleaded, is inextricably intertwined with a wider, ongoing disagreement between the parties that plainly arises from the interpretation of federal and state laws that govern the calculation of cable franchise fees under the current CPUC-issued franchise agreement.

Given the underlying disputes concerning the interpretation of both the current and prior franchise agreements, and the fees and payments due in connection with Comcast's provision of cable services, Comcast's lawsuit arises from the regulation of cable television services. As was the case in *City of Glendale v. Marcus Cable Associates, LLC*, 180 Cal. Rptr. 3d 726 (Cal. Ct. App. 2014), Comcast's lawsuit is properly understood as an artful attempt to plead around § 555a(a). 180 Cal. Rptr. 3d at 743. To hold otherwise would allow parties, through creative pleading, to do precisely what § 555a(a) bars them from doing, i.e., bring suit for damages against a franchising authority for claims that arise from cable regulation merely by omitting any mention of the regulatory dispute from their pleadings. *See Turtle Island*, 438 F.3d at 945 ("To allow parties to avoid this limitation through manipulation of form . . . while in substance challenging the regulations, would permit parties 'through careful pleading . . . [to] avoid the . . . limits imposed by Congress.'") (alteration in original) (citations omitted); *see also Brown v. Gen. Servs. Admin.*, 425 U.S.

820, 833 (1976) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.").

The district court recognized the potential applicability of § 555a(a) but determined that it did not apply to Comcast's suit. Instead, it determined that Comcast's lawsuit had only a tangential connection with cable regulation. The problem with this finding is that, as explained above, this lawsuit does not have a merely tangential connection to cable regulation; artfully pled or not, this lawsuit is in substance one that arises from cable regulation.[3]

Comcast also suggests that Congress did not intend to immunize municipalities in circumstances such as these when it enacted § 555a(a). We disagree. Though § 555a(a) is undoubtedly broad, its terms are not ambiguous or unclear. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951

---

[3] It also appears that the district court to some degree misconstrued our decision in *Jones*, and the Eighth Circuit's decision in *Coplin v. Fairfield Public Access Television Committee*, 111 F.3d 1395 (8th Cir. 1997). Both in *Jones* and *Coplin*, the lawsuit at issue clearly and obviously arose from or concerned cable regulation. *See Jones*, 80 F.3d at 324 ("It is difficult to see what the City was doing, if not regulating, when it precluded Jones from installing more cable infrastructure and from servicing customers unless Jones first obtained a city-wide franchise."); *Coplin*, 111 F.3d at 1408 (lawsuit concerned "a governmental entity's right to regulate the content carried on a public access cable service"). As a result, neither court considered a lawsuit where the connection to cable regulation was somewhat more attenuated. We are hesitant to attribute to either decision the holding that the district court drew from them, namely that § 555a(a) applies only where the claims brought against the franchising authority have a direct and obvious connection to cable regulation.

(9th Cir. 2009) ("The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (alteration in original and citations omitted)). Section 555a(a) simply does what it says, i.e., it exempts local authorities from civil damages in lawsuits arising from cable regulation. Based on the expansive and unrestricted terms used here by Congress, there is no reason for us to conclude that disputes concerning the calculation of fees due or owed under the provisions governing the provision of cable services were ever intended to be excluded from the scope of § 555a(a).[4]

As Comcast seeks a monetary award and has brought claims against a cable franchising authority that arise from cable regulation, we hold that its lawsuit is subject to the bar

---

[4] Even if we were persuaded that the terms Congress chose when it enacted § 555a(a) are in some way ambiguous, Comcast's argument finds little support in that provision's legislative history. Congress considered, but ultimately did not enact, a more narrow version of § 555a(a). *See Caprotti*, 721 N.E.2d at 960 (noting that the original version of § 555a(a) "passed by the Senate immunized local franchising authorities from monetary liability solely 'in cases where the franchising authorities are charged with violating a cable operator's First Amendment rights arising from actions authorized or required by [the Cable Act]'") (quoting H.R. Rep. No. 102-862, at 98 (1992) (Conf. Rep.), *as reprinted in* 1992 U.S.C.C.A.N. 1231, 1280). That version, had it been enacted, would plainly not have applied to Comcast's lawsuit. However, Congress didn't enact that version, or include any other language that specifically limits the scope of this exemption to claims or lawsuits concerning content regulations, the scope of services being offered, or to any other particular sort of regulatory action. Instead, Congress enacted a provision that simply exempts municipalities from claims for civil damages that "aris[e] from the regulation of cable service." § 555a(a). We are bound to give full effect to those plain unambiguous terms.

provided by § 555a(a) and must be dismissed on that basis. Considering the full record and the entire scope of this litigation, it is clear that this lawsuit has sufficient connection with cable regulation to trigger the application of § 555a(a). Because we find that Comcast's lawsuit is barred by § 555a(a), we vacate the district court's grants of summary judgment, and remand with instructions that Comcast's lawsuit be dismissed.[5]

Though we find that Comcast's lawsuit must be dismissed as pleaded and instruct the district court to enter an order to that effect on remand, that dismissal should be without prejudice. *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 939 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." (citations omitted)).

## C.

Comcast argues that a finding that their lawsuit is barred by § 555a(a) leaves them without any possible means of obtaining the return of its security deposit. Because our holding is narrow in scope, we disagree. We have considered here only the application of § 555a(a) to the present lawsuit and determine only that the particular relief requested in Comcast's complaint as pleaded is subject to that bar. We have not considered whether a claim for equitable relief

---

[5] Because we find that Comcast's complaint must be dismissed on this basis, we do not address the other arguments raised on appeal by the parties.

would also be subject to § 555a(a)'s bar.**6**  Nor have we considered whether this bar would apply were Comcast defending a suit for underpayment of franchise fees brought by SMCTC—as would likely occur were Comcast to deduct the deposit as an overpayment from its franchise fee payments, *see* California Public Utilities Code Section 5860(h)—instead of bringing suit for damages.

## IV. CONCLUSION

For the foregoing reasons, we hold that Comcast's lawsuit is barred by 47 U.S.C. § 555a(a).  We therefore vacate the district court's grants of summary judgment and remand with instructions that Comcast's suit be dismissed without prejudice.  The parties shall bear their own costs on appeal.

**VACATED and REMANDED.**

---

[6] Section 555a(a) specifically permits parties to bring suits requesting declaratory or injunctive relief.  Comcast hasn't sought such relief here, but an amended complaint that seeks declaratory or injunctive relief would not necessarily be subject to § 555a(a)'s bar.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *see also Hoang v. Bank of America, NA*, 910 F.3d 1096, 1102–03 (9th Cir. 2018) (explaining that "[l]eave to amend can and should generally be given, even in the absence of such a request by the party," unless "the pleading could not possibly be cured by the allegation of other facts") (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016)).